Present: Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

JETER RAY BARRETT

v.  Record No. 941711        OPINION BY JUSTICE HENRY H. WHITING
                                     September 15, 1995

COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA


Jeter Ray Barrett appeals his conviction for operating a motor vehicle while under the influence of intoxicants (DUI). The dispositive issue is the admissibility of evidence of Barrett's intoxication discovered during a brief police stop to investigate whether Barrett's vehicle was malfunctioning.

State Trooper J.R. Lyons testified that while he was travelling west on Route 360 in Northumberland County at 9:20 p.m. on October 2, 1991, he noticed a pickup truck occupied by a driver and two passengers stopped in a yard off the east lane of the highway. After continuing west for about one-half mile, Lyons turned around and went back to investigate whether the pickup truck had broken down.

Upon returning to the scene, Lyons observed the pickup truck moving with its wheels partially on the shoulder of the road and partially in the private yard, which "seemed odd" to Lyons since the driver could have "pulled onto the roadway." As Lyons approached the rear of the pickup truck, he activated the

---

[1]Justice Whiting prepared the opinion in this case prior to the effective date of his retirement on August 12, 1995, and the Court subsequently adopted the opinion.

cruiser's flashing lights to stop the pickup truck "only to see whether there was a problem."

Both vehicles stopped. As Lyons walked up to the pickup truck, he smelled a strong odor of alcohol "on or about the person of Barrett," who was driving the pickup truck. Barrett admitted that he had been drinking. After Barrett performed three field sobriety tests "very poorly," and a roadside breathalizer test indicated that Barrett was intoxicated, Lyons arrested him on a DUI charge. Shortly thereafter, a blood test was administered to Barrett, which indicated that he had a blood alcohol content of 0.12% by weight by volume.

Later ascertaining that Barrett had two prior DUI convictions in the ten years preceding his arrest on this charge, the Commonwealth amended the arrest warrant to reflect that fact. Code § 18.2-270. Upon his conviction by the general district court, Barrett appealed to the circuit court.

During his bench trial in the circuit court, Barrett moved to suppress Lyons's testimony since the trooper's investigative stop was not supported by "a reasonable, articulable suspicion that a crime was occurring or [was] about to occur," and thus violated Barrett's Fourth Amendment right not to be subjected to unreasonable searches and seizures.[2] Overruling this motion and

_____
[2]The Fourth Amendment to the United States Constitution provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

Barrett's subsequent motion to strike the Commonwealth's evidence, the trial court reasoned that "due to the unusual situation which Lyons was confronted with[,] he was required to investigate [and that] it was natural for Lyons'[s] curiosity to be aroused, since this was a situation that was not seen very often." Following Lyons's testimony, proof of Barrett's blood test and two prior DUI convictions, and testimony adduced by Barrett of his good character, the trial court convicted and sentenced Barrett.

Barrett appealed to the Court of Appeals. Concluding that Lyons's action in stopping Barrett was a seizure in violation of Barrett's Fourth Amendment rights, a panel of that court reversed the judgment of the trial court. Barrett v. Commonwealth, 17 Va. App. 196, 435 S.E.2d 902 (1993). However, after a rehearing en banc, the Court of Appeals affirmed the trial court's judgment. Barrett v. Commonwealth, 18 Va. App. 773, 447 S.E.2d 243 (1994). Barrett appeals to this Court.

The Commonwealth concedes that Lyons's stop and detention of Barrett was a "seizure" for Fourth Amendment purposes and that it was not based on an investigation of any crime, motor vehicle violation, or equipment violation. Hence, the admissibility of the evidence of Barrett's intoxication depends upon whether Lyons had the right to stop Barrett to investigate whether he was experiencing mechanical difficulties with his vehicle.

Barrett contends that this stop can be justified only if

–3–

Lyons reasonably believed that Barrett was engaged in criminal activity at the time he was seized.  On the other hand, the Commonwealth claims that Lyons had the right to make the stop in the exercise of the so-called "community caretaking functions" doctrine articulated in the following language in <u>Cady v. Dombrowski</u>, 413 U.S. 433 (1973):

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office.  Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature.  Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as <u>community caretaking functions</u>, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . .  [O]ften [that] noncriminal contact with automobiles will bring . . . officials in "plain view" of evidence, fruits, or instrumentalities of a crime, or contraband.

413 U.S. at 441-42 (emphasis added).

However, neither <u>Cady</u> nor the two subsequent Supreme Court cases applying the so-called "community caretaking functions" doctrine involved investigative stops and "seizures"; they involved the admissibility of incriminating evidence discovered during a standard police procedure of inventorying property that had properly been taken into custody.  <u>Cady</u>, 413 U.S. at 443; <u>South Dakota v. Opperman</u>, 428 U.S. 364, 375-76 (1976); <u>Colorado v. Bertine</u>, 479 U.S. 367, 375-76 (1987).  Here, the Commonwealth

-4-

urges us to extend this doctrine to validate investigative stops and detention of persons not evidently engaged in criminal activity, but who apparently need some police assistance.

Before we can decide whether this doctrine will be applied in Virginia, we must first consider whether the evidence in this case is sufficient to indicate that Barrett apparently needed police assistance. Lyons testified that he stopped Barrett "to see whether there was a problem" because it "seemed odd" that he would drive partially upon the shoulder of the road and partially on the adjoining yard and not enter the highway.

Zimmerman v. Commonwealth, 234 Va. 609, 363 S.E.2d 708 (1988), not cited by either party, is instructive. There, a police officer observed the defendant driving a vehicle very slowly on a military base. When the police officer "pulled" his vehicle "up behind" the defendant's vehicle, the defendant drove from the travelled portion of the street onto the grass and stopped. Her husband left the passenger's seat and asked for directions to a building on the base. After the police officer gave these directions, the husband returned to the vehicle, the defendant slid over to the passenger's seat, and the husband drove the vehicle beyond the point at which he should have turned had he followed the police officer's directions. The police officer then stopped the vehicle because he noticed that "they had switched operators and that attracted [his] attention." Id. at 611, 363 S.E.2d at 709.

Even though these actions may have seemed unusual to the officer, we held the investigative stop unlawful, concluding that these actions were insufficient to justify a reasonable suspicion of criminal activity. Id. at 612, 363 S.E.2d at 709. We also noted that the detention would have been justified if the police officer had "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Id. at 611, 363 S.E.2d at 709 (quoting Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (emphasis added)).

As previously indicated, the only justification offered for Barrett's "seizure" is Lyons's testimony that he stopped Barrett merely "to see whether there was a problem" because it "seemed odd" that he would drive partially upon the shoulder of the road and partially on the adjoining yard and not enter the highway. Just as the actions in Zimmerman were insufficient to justify a reasonable suspicion of criminal activity, we conclude that Barrett's "odd" conduct, without more, did not give rise to "a reasonable suspicion, based on objective facts," that he needed police assistance. Thus, we need not decide whether the so-called "community caretaking functions" doctrine will be applied in Virginia when the evidence is sufficient to show that the detained person required police assistance.

Accordingly, the Court of Appeals erred in affirming the trial court's judgment. The judgment of conviction will be vacated and the order appealed from will be reversed. And the

warrant will be dismissed, since without the evidence acquired during Lyons's illegal stop, there was no evidence to support his conviction.

<u>Reversed and dismissed</u>.