COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Bray
Argued at Richmond, Virginia


SHAWN AUBREY JONES
                                        MEMORANDUM OPINION[*] BY
v.          Record No. 2756-97-2          JUDGE LARRY G. ELDER
                                             NOVEMBER 17, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                 Charles L. McCormick, III, Judge

          Buddy A. Ward, Public Defender (Joseph M.
          Teefey, Jr., Assistant Public Defender;
          Office of the Public Defender, on brief), for
          appellant.

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Shawn Aubrey Jones (appellant) appeals from his bench trial

conviction for driving under the influence of alcohol in

violation of Code § 18.2-266(ii).  On appeal, he contends that

the community caretaker exception to the warrant requirement did

not justify the stop of his vehicle and that the trial court,

therefore, erroneously denied his motion to suppress.  The

Commonwealth contends that the community caretaker doctrine

justified the stop and that, even if it did not, the officer had

probable cause to detain appellant for speeding.  For the reasons

that follow, we uphold the trial court's denial of appellant's

motion to suppress and affirm his conviction.

─────────────────
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

I.

FACTS

At about 9:30 p.m. on April 5, 1997, Officer Nelson Watson observed a vehicle pass him on Main Street going in the opposite direction.  The driver, whom Watson recognized as appellant, "had his left arm out the window waving and was hollering in [Watson's] direction . . . as he passed [Watson]."  Watson saw no other vehicles or pedestrians in the area at that time.  Watson turned his vehicle around, pulled in behind appellant to follow him and activated his lights in order to make a stop.  Watson testified that he executed the stop because of

> concern . . . that [appellant] was asking for assistance.  Several times in my past career I've had . . . the drivers [of vehicles] wave me over, wave at me [when] they were either heading to a problem where they wanted assistance . . . or they needed assistance in the vehicle[.]  [A]t that time that was my concern, that he needed assistance.

"As [Officer Watson] initiated the light," appellant's vehicle "sped up to approximately 40 [miles per hour] in a posted 25 [mile-per-hour] zone" and made a right turn at the same speed.  Watson then radioed for back-up.  After traveling "a good 500 yards" at that speed, appellant's vehicle was forced to slow down because several people were standing in the road.  After proceeding past the pedestrians, appellant pulled over and stopped.

In response to Officer Watson's inquiry, appellant said that nothing was wrong.  However, Officer Watson "detected the odor of

alcohol at the vehicle window."  He asked for appellant's driver's license, but appellant said he did not have it with him. Two to three hours earlier, Officer Watson had seen appellant standing with a beer in his hand in a yard in which was parked the car appellant was driving at the time of the stop.  Due to this fact, coupled with the odor of alcohol coming from appellant's vehicle, Watson asked appellant to get out of the car and questioned him regarding his alcohol consumption.  Appellant reported that he had drunk a six-pack of beer in the previous one-and-one-half hours, finishing his last beer about thirty minutes prior to the stop.

Watson administered several field sobriety tests, which appellant did not pass satisfactorily, and Watson placed him under arrest at 9:35 p.m.  A breathalyzer administered at 10:14 p.m. registered a blood alcohol content of 0.14 grams per 210 liters of breath.  Watson charged appellant for driving under the influence.  He did not charge him for speeding.

Appellant moved to suppress, contending that Watson lacked objective facts providing reasonable suspicion of criminal activity to support the stop and that stopping appellant under the community caretaker doctrine to see if he needed assistance was merely a pretext to investigate whether appellant was drunk. If Watson had wanted to stop appellant under the community caretaker doctrine, appellant argued, he should have followed appellant without activating his lights in order to gather

additional information showing that appellant needed assistance. The Commonwealth's attorney responded that he was "not even arguing a <u>Terry</u> stop in this, we are arguing our community caretaker." The trial court ruled,

> I don't necessarily believe this is a pretextual stop. I'm not convinced that's what the situation was. I think the officer was attempting to render assistance because he thought he was needed, and then he was frustrated in doing so by the fact that [appellant] sped up, and tried to get away from him.
>
>      \*       \*       \*       \*       \*       \*       \*
>
> Well, I don't think this officer would have ever stopped this man if he hadn't stuck his arm out of the window and carried on like that. . . . [V]iewing all of the circumstances, I think the officer acted reasonably . . . , so I'm going to deny the motion.

The trial court then found appellant guilty of DUI but suspended execution of the sentence pending the outcome of this appeal.

## II.

## ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. <u>See</u> <u>Simmons v. Commonwealth</u>, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); <u>Alexander v. Commonwealth</u>, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible

therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699.

Under these standards, we hold that the officer had probable cause to stop appellant for speeding.  Therefore, the trial court did not err in denying appellant's motion to suppress and convicting him for violating Code § 18.2-266(ii).  Because we hold the stop proper based on probable cause to believe that appellant was speeding, we do not address the community caretaker issue.

A police officer may conduct an investigatory stop of a motor vehicle if he has at least "articulable and reasonable suspicion" that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law.  See Murphy v. Commonwealth, 9

- 5 -

Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (citing <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979)). Of course, where an officer actually observes a driver violate the law, he has probable cause to stop the driver to issue a traffic citation or take him into custody. See <u>May v. Commonwealth</u>, 3 Va. App. 348, 354, 349 S.E.2d 428, 431 (1986).

The Fourth Amendment requires only that an <u>objectively</u> reasonable basis exist for a stop. <u>See, e.g.</u>, <u>Whren v. United States</u>, 517 U.S. 806, 812-13 (1996). "'[T]hat the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, <u>viewed objectively</u>, justify that action.'" <u>Id.</u> at 813 (quoting <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978)) (emphasis added); <u>see also</u> <u>Ohio v. Robinette</u>, 519 U.S. 33, 38-39 (1996); <u>Limonja v. Commonwealth</u>, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 479-80 (1989) (<u>en</u> <u>banc</u>).

"In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority." <u>Thomas v. Commonwealth</u>, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (<u>en</u> <u>banc</u>) (citing <u>California v. Hodari D.</u>, 499 U.S. 621, 628 (1991)). A suspect is not seized within the meaning of the Fourth Amendment if he is fleeing from an officer attempting to apprehend him, and any evidence obtained during that flight is not the product of a

seizure.  See Hodari D., 499 U.S. at 625-29 (upholding admissibility of drugs suspect discarded while fleeing from police because, even though police lacked reasonable suspicion for stop prior to flight, they had not effected a seizure at time suspect discarded drugs); see also Woodson v. Commonwealth, 245 Va. 401, 406, 429 S.E.2d 27, 29-30 (1993).

Here, Officer Watson was justified in stopping appellant when he observed him speeding.  Although Officer Watson activated his flashing lights and tried to stop appellant before appellant began speeding, appellant failed to comply with Officer Watson's show of authority and, therefore, he was not seized until after Watson observed him speeding.  Therefore, Officer Watson had probable cause for the seizure by the time appellant submitted to Watson's show of authority.  That Officer Watson did not rely on appellant's speeding as the basis for his stop is irrelevant under this analysis, for facts known to Officer Watson made the stop of appellant for speeding objectively reasonable under the Fourth Amendment.

It also matters not that the Commonwealth did not assert probable cause to believe appellant was speeding as a basis for Officer Watson's stop.  Rule 5A:18 does not require an appellee "to raise an issue at trial before it may be considered on appeal where the issue is not offered to support reversal of a trial court ruling."  See, e.g., Driscoll v. Commonwealth, 14 Va. App. 449, 451-52, 417 S.E.2d 312, 313 (1992).  Here, the trial court

- 7 -

implicitly found that the officer's testimony was credible[1] and expressly ruled that the officer "acted reasonably" under "all of the circumstances."  Regardless of whether the court relied on the probable cause analysis as a basis for its denial of the motion to suppress, it reached the proper result, and we uphold that result on appeal.  See, e.g., id. at 452-53, 417 S.E.2d at 313-14 (holding that appellate court may affirm judgment of trial court when it has reached right result for wrong reason).

For these reasons, we affirm appellant's conviction.

Affirmed.

---

[1]In ruling, the trial judge said, "I think the officer was attempting to render assistance . . . , and then he was frustrated in doing so by the fact that [appellant] sped up . . . ."

Benton, J., dissenting.

Appellate courts may apply the doctrine of "right result, wrong reason" only in "proper case[s]." See Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963). This is not a proper case for the rule. We have previously held, for example, that the "right result for the wrong reason . . . rule . . . may not be used if the correct reason for affirming the trial court was not raised in any manner at trial." Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992). See also Eason, 204 Va. at 352, 131 S.E.2d at 283. Furthermore, this rule may not be used "where, because the trial [judge] has . . . confined [the] decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial [judge's] decision." Driscoll, 14 Va. App. at 452, 417 S.E.2d at 314. See also Sateren v. Montgomery Ward and Co., 234 Va. 303, 305-06, 362 S.E.2d 324, 326 (1987).

At trial, the Commonwealth's attorney informed the trial judge, "we are not even arguing a Terry stop in this, we are arguing our community caretaker; the officer . . . [has] not articulated that there may . . . [have been] criminal activity." Relying solely upon the community caretaker argument advanced by the Commonwealth, the trial judge found that "the officer was attempting to render assistance because he thought he was needed." The Commonwealth advanced no other theory to support the officer's actions, and the trial judge made no findings or

rulings that support any other theory.

Moreover, because of the Commonwealth's attorney's concession that the officer had not articulated a suspicion of criminal activity, the record clearly proves that neither the issue of reasonable articulable suspicion nor the issue of probable cause to support the stop "was ever brought to the attention of the [trial judge], that [neither issue] was ever argued before [the judge], or that [the judge] was ever called upon, in any manner, to rule thereon."  Eason, 204 Va. at 352, 131 S.E.2d at 283.  Thus, I would hold that this is not a proper case for the "right result for the wrong reason" rule.

In Barrett v. Commonwealth, 250 Va. 243, 462 S.E.2d 109 (1995), the Supreme Court addressed essentially the same issue posed in this case, i.e., whether odd or unusual conduct will support an investigative stop of a person who is not evidently engaged in criminal conduct.  Id. at 248, 462 S.E.2d at 112.  In Barrett, the trial judge found that the officer's conduct was reasonable and that "'due to the unusual situation which [the officer] was confronted with[, the officer] was required to investigate [and that] it was natural for [the officer's] curiosity to be aroused, since this was a situation that was not seen very often.'"  250 Va. at 245, 462 S.E.2d at 111.  However, the Supreme Court held that finding insufficient because "'odd' conduct, without more, did not give rise to 'a reasonable suspicion, based on objective facts' that [the driver] needed

police assistance." <u>Id.</u> at 248, 462 S.E.2d at 112. In the absence of "'a <u>reasonable suspicion, based on objective facts</u>, that the individual is involved in criminal activity,'" a driver is free to drive without being ordered to stop. <u>Id.</u> at 247, 462 S.E.2d at 112 (quoting <u>Leeth v. Commonwealth</u>, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (emphasis added)).

Because the Commonwealth relied solely upon the community caretaker doctrine, to the express exclusion of any other theory, and because the trial judge based his ruling solely upon the community caretaker doctrine, I would hold that the record fails to support the trial judge's application of that doctrine in refusing to suppress the evidence. For these reasons, I would reverse the conviction and remand for a new trial.