## CIRCUIT COURT OF ROCKINGHAM COUNTY

Commonwealth of Virginia

    v.

Matthew Proseus

September 3, 2004

Case Nos. 30606, 30607

BY JUDGE JOHN J. MCGRATH, JR.

    This matter is before the Court on the Defendant's Motion to Suppress Evidence which was seized by the police in a warrantless search of his home.

    On January 17, 2004, Officer Alvis of the Harrisonburg Police Department was on routine patrol when he was dispatched to a local townhouse development to investigate an "open door in progress" complaint. The report of an open front door of an occupied townhouse dwelling was received by the police 911 dispatcher from a security guard at the housing complex. Upon arrival at the scene at approximately 10:00 p.m., Officer Alvis saw the front door of an obviously occupied townhouse wide open so that you could see through the entire length of the house. No persons were visible within the house, although the kitchen in the rear of the home seemed messy and cluttered. Officer Alvis called for back-up, and he and another officer announced themselves in a loud voice trying to elicit a response from any inhabitants.

    When they received no response from anyone in the house, they entered and searched from room to room looking for either victims or perpetrators of crime and to determine if anyone was in need of assistance. While going through the house, one of the officers saw in plain view smoking devices normally associated with the use of illegal narcotics. The police officers then secured the house and applied to a magistrate for a search warrant. Upon execution of the search warrant, the police seized evidence which led to charges being placed against the defendant for the illegal possession of cocaine and marijuana.

48

The Commonwealth takes the position that the police were justified in entering defendant's home without a search warrant because in carrying out their police duties, the policemen were warranted in entering the house because of "exigent circumstances" and/or in carrying out their "community caretaker duties." The defendant argues that there were no exigent circumstances and that the community caretaker exception does not warrant intrusion into defendant's home without a warrant; therefore, the police actions were in violation of his constitutional rights.

Although the Supreme Court has referred with approval to the "community caretaker" exception to the constitutional requirement for a search warrant, it has been in the context of the search of a thing or place other than a person's home. See, e.g., *Cady v. Dombrowski*, 413 U.S. 433 (1973). The Fourth Circuit Court of Appeals fairly recently summarized the law of the community caretaker exception to the search warrant requirement in *Phillips v. Peddle*, 7 Fed. Appx. 175; 2001 U.S. App. LEXIS 4045 (4th Cir. 2001):

> It is a well settled "principle of Fourth Amendment law that searches . . . inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Here, the appellee argues that his entry into the house was justified under the "community caretaker" doctrine. The United States Supreme Court and this Court have both recognized that a police officer serving as a community caretaker to protect persons and property is constitutionally permitted to make searches and seizures without a warrant. See *Cady v. Dombrowski*, 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973); *United States v. Newbourn*, 600 F.2d 452 (4th Cir. 1979). In *Cady*, the United State Supreme Court validated the warrantless entry and search of an automobile because the officers were engaged in a community caretaking function, and their actions were unrelated to "the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441.
>
> Most cases involving the community caretaker doctrine have involved its application to the search of an automobile, and the courts have distinguished searches of and entries into automobiles from those of private residences. See, e.g., *South Dakota v. Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976); *Colorado v. Bertine*, 479 U.S. 367, 93 L. Ed. 2d 739, 107 S. Ct. 738 (1987). At least one other federal court of appeals has

recognized that the "community caretaker" doctrine can apply in limited circumstances to justify a warrantless entry in a home. See *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996). In *Rohrig*, the defendant moved to suppress evidence discovered during a warrantless entry into his home. The police entered the home in the middle of the night to turn down loud noise that was disturbing neighbors, but only after repeated banging on the residents' door and calling them on the telephone. The Sixth Circuit upheld the search by referring to the community caretaking function that the United State Supreme Court has established. See *Cady*. One fact that the Sixth Circuit found to be important was that the police officers entered the residence for the limited purpose of locating and abating the nuisance and were not involved in a criminal investigation.

Virginia state courts have also adopted the "community caretaker" doctrine under certain circumstances. In *Commonwealth v. Waters*, 20 Va. App. 285, 456 S.E.2d 527 (1995), the Virginia Court of Appeals acknowledged that, while most cases interpreting the "community caretaker" function concern police contact with motor vehicles, "No language in *Barrett* or *Cady* restricts an officer's caretaking actions to incidents involving automobiles." *Waters* at 531 (citing *Barrett v. Commonwealth*, 18 Va. App. 773, 447 S.E.2d 243 (1994) (*en banc*), rev'd on other grounds, 250 Va. 243, 462 S.E.2d 109 (1995)).[1] *Barrett* recognized that the duty of the police extends beyond law enforcement and includes "an obligation to maintain order and render needed assistance." *Barrett* at 777, 447 S.E.2d at 245. In *Wood v. Commonwealth*, 27 Va. App. 21, 497 S.E.2d 484 (1998), the Virginia Court of Appeals declined to apply the community caretaker exception to justify a warrantless intrusion into a private home, but noted:

"The [United States] Supreme Court has yet to decide whether a situation might exist that would justify a warrantless intrusion into an individual's home under the 'community caretaker' doctrine. . . . The Supreme Court has not decided that issue, and we need not decide it

---

[1] The Virginia Supreme court overturned the Virginia Court of Appeals, but, in doing so, the Virginia Supreme Court did not reject the community caretaker doctrine. Instead, the Virginia Supreme Court held that there was insufficient evidence to show that the subject who was stopped needed any police assistance. See *Barrett v. Commonwealth*, 250 Va. 243, 462 S.E.2d 109 (1995).

here because, on these facts, the officers' intrusion . . . could not be considered a caretaking function."

27 Va. App. at 27, 497 S.E.2d at 487. Thus, while refusing to apply the "community caretaker" doctrine to an intrusion into a private dwelling, the Virginia Court of Appeals left open the possibility that it could apply, particularly when the intrusion is "totally divorced from investigating criminal activity and acquiring evidence."

*Id.* at pp. 178-79.

The Virginia Court of Appeals sitting *en banc* in *Wood v. Commonwealth*, 27 Va. App. 21 (1998), had taken a narrow view of the community caretaker exception. The Court of Appeals rejected the community caretaker exception when it was used as a justification for a warrantless search of a house, and in so doing noted:

> The Supreme Court's emphasis on the distinction between motor vehicle searches and searches of an individual's home makes clear that the community caretaking function used to uphold a vehicle search, such as existed in *Cady*, may not be sufficient to justify an intrusion into an individual's home. The fact that circumstances which justify a warrantless search in an automobile may not justify an intrusion into a home or office under the community caretaking function was reiterated in *South Dakota v. Opperman*, 428 U.S. 364 (1976).

*Id.* at p. 27.

Although the Court of Appeals did not flatly reject the use of the community caretaker exception to justify warrantless entry into a residence, it clearly indicated that a person's home enjoyed a very special protection from warrantless entry and the Commonwealth had a high burden in overcoming the presumption that a warrantless search was illegal.

In *Hargraves v. Commonwealth*, 37 Va. App. 299 (2002), decided four years after *Wood, supra*, the Court of Appeals reiterated its reluctance to use a "community caretaker" exception to rebut the presumption that all warrantless entries into a home are presumptively unconstitutional. Although some Virginia Circuit Courts have permitted the "community caretaker" exception to be used for a warrantless entry into a dwelling house, other Courts have rejected such attempts. *Compare, Commonwealth v. Swartz*, 2003 Va. Cir.

(2003) (Fairfax County) (by Judge R. T. Ney),[2] *with United States v. Gillespie*, 332 F. Supp. 2d 923; 2004 U.S. Dist. LEXIS 17176 (W.D. Va. 2004).[3]

This is pretty much where the law stood in Virginia until a panel of the Court of Appeals on August 17, 2004, handed down its opinion in *Kyer v. Commonwealth*, 43 Va. App. 603 (2004). In *Kyer*, the Court of Appeals was presented with a fact pattern roughly similar to the one in this case. The police, who were investigating the residents of a house as suspects in a breaking and entering, approached their house to seek an interview. Upon approaching the front door of the house, at 4:00 a.m., the police noticed that the front door was ajar. The police announced their presence and receiving no response, drew their weapons and entered the house to see if there was a breaking and entering in progress or whether anyone needed their assistance. After analyzing the legal precedents in which the "exigent circumstances" and "community caretaker" exceptions had been developed, the Court of Appeals in *Kyer, supra*, concluded:

> Accordingly, we find that any distinction between the two exceptions has been effectively eradicated in the Commonwealth. In fact, such eradication has erred on the side of the sanctity of individuals' *Fourth Amendment* privacy rights, by requiring, in every case, that police officers conducting warrantless searches pursuant to these exceptions do so independently of their criminal investigatory functions. In light of this, we find no reason to conclude that both doctrines, community caretaker and emergency, *given the appropriate circumstances*, should not extend to warrantless searches of homes.

*Kyer* at p. 5.

After concluding that the "community caretaker" doctrine could justify a warrantless search of a person's home, the Court of Appeals went on to determine under what circumstances the exception can be utilized. The Court set out the following rule:

---

[2] This opinion is printed below at page 513. [Reporter's Note]

[3] It should be noted that *Gillespie, supra*, was decided by the United States District Court for the Western District five days before the Court of Appeals of Virginia's decision in *Kyer v. Commonwealth*, 43 Va. App. 603 (2004), was handed down.

Our analysis, however, is not yet complete. We must now determine whether the circumstances presented in the case at bar were sufficient to warrant application of the community caretaker exception. The appropriateness of applying the community care-taker doctrine to a given factual scenario is determined by whether, based upon the totality of the circumstances, it was reasonable for the officer to believe that his or her actions were *necessary* for: "(1) the protection of the owner's property while it remains in police custody, (2) the protection of police against claims or disputes concerning lost or stolen property, [or] (3) protection of the public and the police from physical danger." *Williams*, 42 Va. App. at 730, 594 S.E.2d at 309. Specifically, factors to be considered are whether (1) the officer's initial contact or investigation is reasonable; (2) the intrusion is limited; and (3) the officer is not investigating criminal conduct under the pretext of exercising his community caretaker function. *Waters*, 20 Va. App. at 290, 456 S.E.2d at 520.

*Id.* at pp. 5-6.

In this case, the defendant makes the interesting argument that, because Officer Alvis indicated that he entered the house in the belief that possibly a breaking and entering had occurred or was in progress, he was investigating criminal activity, and, therefore, the "exigent circumstances" or "community caretaker" exceptions cannot apply. Although this argument is superficially attractive, it misses the mark. Clearly, whenever police happen upon a situation such as an open door late at night when on routine patrol, their obligation to investigate has dual motivation: (1) to determine if any inhabitant needs help, and (2) to determine if a crime is in progress or has been committed, and to apprehend the culprit or secure the crime scene. This is not the type of law enforcement or criminal investigation which is referred to in the case law.

Read in context, the cases such as *Cady v. Dombrowski, supra; Wood v. Commonwealth, supra;* and *Hargraves v. Commonwealth, supra*, are referring to criminal investigations which predate the visit to the defendant's home and in which the police have already identified the owner or resident of the home as a potential suspect and enter his or her home in furtherance of that investigation.

In this case, Officer Alvis received a call from dispatch for an "open door in progress." He did not know who the residents of the home were, much less suspect them of any criminal activity. He arrived at the home sometime

after 10:00 p.m. on January 16th and saw that the townhouse was occupied, but no one responded to his repeated attempts to obtain a verbal response. Although no evidence was presented on the weather that night, the late January evenings in the Shenandoah Valley are not conducive to people leaving their doors wide open. It was perfectly logical for a reasonable person in Officer Alvis' position to suspect that something untoward was occurring or had occurred in the house and that the inhabitants might require assistance.

Upon entrance, the officers made a sweep through the house, but they did not open cabinets, drawers, or other personal areas; they simply looked for human beings. Upon seeing the suspected contraband in plain view, they did not seize it at the time. They went before a magistrate and obtained a search warrant. These were reasonable and appropriate acts by law enforcement officers in the course of carrying out their "community caretaker" responsibilities. An obviously occupied home with its front door wide open on a January night is a situation that clearly warrants further investigation. When there is no response to the police announcement of their presence, that clearly increases the necessity for further investigation. The police, at that point, may be dealing with an empty house with a defective door latch, an incapacitated person who was trying to get out of the house and had fainted, a family bound up by burglars who had left the premises, or a burglar/murderer and/or rapist still on the premises. The possibilities are virtually endless; therefore, the police had a right, indeed an obligation, to investigate further to ascertain the facts and to take steps to secure the premises.

As Judge Ney quite eloquently stated in *Commonwealth v. Swartz*, 2003 Va. Cir. LEXIS 255 (Fairfax County, 2003):

> [I]t would defy reason to require the officers to secure a search warrant before being able to enter the home and leave the putative intruders free to complete their crime. Instead, a search restricted in scope to that necessary to determine whether a crime was in progress or whether a resident needed help "was exactly the type of police work the community would expect."

*Ibid.* (footnotes omitted).

Therefore, the defendant's Motion to Suppress is hereby denied.

The Clerk is directed to send attested copies of this Opinion and Order to Phillip Figura, Esquire, Assistant Commonwealth's Attorney, and to Robert F. Keefer, Esquire, counsel for the defendant.