COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Beales
Argued at Salem, Virginia


GUY ANTHONY BANKS, JR.

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 3059-08-3               JUDGE ELIZABETH A. McCLANAHAN
                                                    APRIL 26, 2011
COMMONWEALTH OF VIRGINIA


            UPON REMAND FROM THE SUPREME COURT OF VIRGINIA

         FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                        J. Leyburn Mosby, Jr., Judge


         Keith Orgera, Assistant Public Defender, for appellant.

         Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
         Cuccinelli, II, Attorney General, on briefs), for appellee.


        This case returns to us on remand from the Supreme Court of Virginia for consideration

of "whether the circuit court erred in holding that Banks' state of undress presented an exigency

justifying the officers' seizure of the jacket." Banks v. Commonwealth, 280 Va. 612, 619, 701

S.E.2d 437, 441 (2010). Having considered that issue, we find the trial court erred in denying

Banks' motion to suppress, and we reverse its judgment.

                                    I.  BACKGROUND

        "'In reviewing the denial of a motion to suppress based on the alleged violation of an

individual's Fourth Amendment rights, we consider the facts in the light most favorable to the

Commonwealth.'" Lawson v. Commonwealth, 55 Va. App. 549, 552, 687 S.E.2d 94, 95 (2010)

(quoting Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 271 (2007)).

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On November 15, Lynchburg Police Officers Mitchell and Clements arrested Banks in the bedroom doorway inside the home where he was found. Banks was wearing shorts, a thin, long-sleeved shirt, and no shoes. Officer Mitchell asked Banks "if he wanted to grab his shoes or a jacket" because it was "a rather cold day outside."[1] Banks, handcuffed by that point, said "yes" at which time they went back into the bedroom.[2] Banks then told Mitchell his shoes were in his vehicle so Banks and Mitchell left the bedroom, exited the house, and retrieved the shoes from Banks' vehicle. Mitchell then placed Banks in the patrol car. Officer Clements stayed behind in the bedroom and asked the female occupant of the bedroom if Banks had a coat there.[3] She pointed to a jacket hanging on the top of a closet door approximately six feet from where Clements was standing. Clements retrieved the jacket and, upon searching it, found a gun. The jacket, with the gun in the pocket, was placed in the trunk of the police cruiser. Banks was charged with possession of a firearm by a convicted felon.[4]

---

[1] Officer Clements testified it was forty-five degrees outside with twenty to twenty-five-mile-per-hour winds.

[2] Although at trial Banks stated he was wearing a "thermal" shirt and denied asking for a jacket, we review the evidence in the light most favorable to the Commonwealth, Lawson, 55 Va. App. at 552, 687 S.E.2d at 95, which principle requires we "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (en banc) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)) (internal citations and quotation marks omitted).

[3] Clements testified he did not ask Banks about a jacket and didn't know whether Banks was asked by Mitchell about a jacket but decided to get a jacket for him because it was cold outside.

[4] Banks was charged with two counts of possession of a firearm but the trial court later amended the indictment to merge the two counts. Other charges for attempted robbery, use of a firearm in an attempted robbery, malicious wounding, and use of a firearm in a malicious wounding were severed from the possession charges and are not before us in this appeal.

Banks moved to suppress the jacket claiming a violation of his Fourth Amendment rights since the officers did not have a warrant to search the bedroom or seize the jacket. The trial court denied the motion concluding that the officers' need to obtain the jacket for Banks constituted "exigent circumstances."[5]

On appeal to this Court, we concluded in an unpublished decision that, viewing the evidence in the light most favorable to the Commonwealth, the seizure of the jacket was lawful under the Fourth Amendment as authorized by Banks' consent. Banks v. Commonwealth, Record No. 3059-08-3, 2009 Va. App. LEXIS 507 (Va. Ct. App. Nov. 10, 2009).[6] The Supreme Court reversed our decision and remanded the case for consideration of "whether the circuit court erred in holding that Banks' state of undress presented an exigency justifying the officers' seizure of the jacket." Banks, 280 Va. at 619, 701 S.E.2d at 441.[7]

---

[5] The trial court rejected the Commonwealth's arguments that Banks lacked standing to challenge the seizure, that the seizure was pursuant to a search incident to a lawful arrest, and that the gun would have been inevitably discovered.

[6] In reaching our decision we noted the decision in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009) (concluding this Court erred in applying "the right result for the wrong reason" doctrine), would not prevent us from considering whether the seizure of the jacket was lawful pursuant to Banks' consent since both the Commonwealth and Banks made factual arguments in the trial court regarding Banks' consent and presented evidence to the trial court pertaining to whether the jacket was retrieved pursuant to Banks' request. As such, we observed that no additional findings of fact were required to permit us to conclude the jacket was obtained with Banks' consent. Banks, 2009 Va. App. LEXIS 507, at *7-8 n.8; see Whitehead, 278 Va. at 115, 677 S.E.2d at 270.

[7] After our decision in Banks, the Supreme Court of Virginia reconsidered the case law on the "right result for the wrong reason" doctrine and held that failure to make the argument before the trial court is not the proper focus. Rather, consideration of the facts in the record and whether additional factual presentation is necessary is the proper focus. Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010). Furthermore, in reviewing our decision in this case, the Supreme Court of Virginia crafted a new standard of review to determine whether the "right result for the wrong reason" doctrine should be applied. The Supreme Court held that while the "general rule on review is that the evidence is viewed in the light most favorable to the prevailing party below," "when considering whether the 'right result wrong reason' doctrine should be applied, the standard of review is whether the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the

II.  ANALYSIS

To prevail on appeal Banks bears the burden to "show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error."  Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003).  "The question whether the Fourth Amendment has been violated is always 'a question of fact to be determined from all the circumstances.'"  Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008) (quoting Ohio v. Robinette, 519 U.S. 33, 40 (1996)) (citation omitted).  Although we review the trial court's application of the law *de novo*, Kyer v. Commonwealth, 45 Va. App. 473, 479, 612 S.E.2d 213, 216-17 (2005) (*en banc*), we defer to the trial court's findings of fact taking care "'both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'"  Malbrough, 275 Va. at 169, 655 S.E.2d at 3 (quoting Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000)) (citation omitted); see also Ferguson v. Commonwealth, 52 Va. App. 324, 334, 663 S.E.2d 505, 510 (2008), aff'd, 278 Va. 118, 677 S.E.2d 45 (2009).

Banks argues the trial court erred in denying his motion to suppress because the Commonwealth failed to carry its burden in proving that exigent circumstances justified the warrantless seizure of his jacket from the bedroom.[8]  The Commonwealth contends there was "no deprivation of his Fourth Amendment rights" because "Banks' state of undress present[ed]

---

circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony."  Banks, 280 Va. at 618, 701 S.E.2d at 440.  Applying this standard of review, the Supreme Court stated "the facts surrounding the seizure were in conflict and that the circuit court neither resolved the dispute nor indicated how it weighed or credited the contradicting testimony as to whether Banks asked for a jacket."  Id.  The Supreme Court concluded that this Court was "in no position to find that he consented to the seizure" and held we erred in applying the "right result for the wrong reason" doctrine.  Id. at 618, 618, 701 S.E.2d at 440, 441.

[8] Banks does not contest the authority of the police to search the jacket once seized.

an exigency" and "[t]he officers reasonably sought to provide Banks with appropriate clothing."

In making this contention, the Commonwealth is advocating the creation of an exception, either

as a subset or extension of the emergency/community caretaker exceptions, or as a separate

"clothing exception," allowing police to determine that an arrestee's Fourth Amendment rights

should give way to his interests in being provided with what the police deem as appropriate

clothing. The exception would purportedly permit such determinations by police without regard

to which interests an arrestee would choose to protect since obtaining the arrestee's consent

would eliminate the need for the exception. See Schneckloth v. Bustamonte, 412 U.S. 218, 222

(1973) ("a search authorized by consent is wholly valid").

### A. Emergency/Community Caretaker Exceptions

"'Searches and seizures inside a home without a warrant are presumptively unreasonable.

. . . The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent

circumstances, that threshold may not reasonably be crossed without a warrant.'" Sharpe v.

Commonwealth, 44 Va. App. 448, 455, 605 S.E.2d 346, 349-50 (2004) (quoting Payton v. New

York, 445 U. S. 573, 586 (1980)). As the United States Supreme Court has recognized,

> one exigency obviating the requirement of a warrant is the need to
> assist persons who are seriously injured or threatened with such
> injury. The need to protect or preserve life or avoid serious injury
> is justification for what would be otherwise illegal absent an
> exigency or emergency. Accordingly, law enforcement officers
> may enter a home without a warrant to render emergency
> assistance to an injured occupant or to protect an occupant from
> imminent injury.

Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (internal quotations and citations omitted)

(finding the entrance reasonable since police observed fighting and an injured adult). Likewise,

this Court has held the "emergency doctrine" permits police to make a warrantless entry into a

home when "they reasonably believe that a person within is in need of immediate aid."

Reynolds v. Commonwealth, 9 Va. App. 430, 437, 388 S.E.2d 659, 663 (1990) (internal citations

and quotation marks omitted); see Mincey v. Arizona, 437 U.S. 385, 392 (1978). Such a warrantless entry during an emergency is justified by the fact that "the preservation of human life is paramount to the right of privacy protected by search and seizure laws and constitutional guaranties." Reynolds, 9 Va. App. at 437, 388 S.E.2d at 664 (internal quotation marks and citation omitted). See also Kyer, 45 Va. App. at 480-81, 612 S.E.2d at 217. When the police fail to obtain a warrant, the Commonwealth bears "a heavy burden to justify the warrantless entry" based upon a purported exigency. Reynolds, 9 Va. App. at 436, 388 S.E.2d at 663.

The United States Supreme Court has upheld warrantless searches of automobiles in the exercise of "community caretaking functions" carried out by police during the inventory of property taken into custody. See Cady v. Dombrowski, 413 U.S. 433 (1973) (trunk of car towed from accident scene was searched pursuant to standard police procedure); South Dakota v. Opperman, 428 U.S. 364 (1976) (after car impounded for parking violations police inventoried contents pursuant to standard police procedure); Colorado v. Bertine, 479 U.S. 367 (1987) (vehicle impounded after driver arrested for drunk driving searched by police according to standard police procedure). As the Court has explained,

> [our] previous recognition of the distinction between motor vehicles and dwelling places leads us to conclude that the type of caretaking "search" conducted here of a vehicle that was neither in the custody nor on the premises of its owner, and that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained.

Cady, 413 U.S. at 447-48.

Warrantless inventory searches of vehicles have also been upheld in Virginia. See, e.g., Reese v. Commonwealth, 220 Va. 1035, 265 S.E.2d 746 (1980); Williams v. Commonwealth, 42 Va. App. 723, 594 S.E.2d 305 (2004). Although the Supreme Court of Virginia has yet to rule on whether the community caretaker doctrine applies in Virginia outside the context of vehicle

inventory searches,[9] this Court has stated the community caretaker doctrine is not limited to police contact with vehicles but also permits officers to conduct seizures of individuals in order to render aid to someone in need or distress. Commonwealth v. Waters, 20 Va. App. 285, 291, 456 S.E.2d 527, 530-31 (1996).[10] Thus, in this context, the community caretaker doctrine, like the emergency doctrine, is premised on the "commonsense rationale that 'preservation of human life is paramount to the right of privacy' protected by the Fourth Amendment." Kyer, 45 Va. App. at 480, 612 S.E.2d at 217 (quoting Reynolds, 9 Va. App. at 437, 388 S.E.2d at 664).[11]

Applying these principles, we conclude the officers' desire "to provide Banks with appropriate clothing" did not present an exigency justifying the warrantless seizure of his jacket pursuant to the emergency/community caretaker exceptions. Banks was not threatened with imminent harm, and there are no facts demonstrating Banks was "in need or distress" requiring the officers to "render aid" within the meaning of the emergency/community caretaker doctrines as they have been applied in Virginia. See Reynolds, 9 Va. App. at 437, 388 S.E.2d at 663;

---

[9] Explaining that "neither Cady nor the two subsequent Supreme Court cases applying the so-called 'community caretaking functions' doctrine involved investigative stops and 'seizures'; they involved the admissibility of incriminating evidence discovered during a standard police procedure of inventorying property that had properly been taken into custody," the Supreme Court of Virginia held in the context of the stop of a vehicle "we need not decide whether the so-called 'community caretaking functions' doctrine will be applied in Virginia" since the evidence was insufficient to show the detained person required police assistance. Barrett v. Commonwealth, 250 Va. 243, 246-48, 462 S.E.2d 109, 111-12 (1995).

[10] Unlike the emergency exception, the community caretaker exception has not been applied in Virginia to permit warrantless entries into a home.

[11] We have stated when an exception is claimed under the emergency/community caretaker doctrines, the claim "must be scrutinized to insure that it is not mere pretext for entries and searches that otherwise fall under the requirement for a warrant." Reynolds, 9 Va. App. at 438, 388 S.E.2d at 664 (internal quotation marks and citation omitted). The trial court found the officers' claim was not mere pretext for seizure of the jacket, and Banks does not contend otherwise. However, we must ultimately determine whether "the circumstances, viewed *objectively*, justify" Officer Clements' entry into the bedroom to retrieve a jacket for Banks. Stuart, 547 U.S. at 404 (emphasis in original and citations omitted).

Waters, 20 Va. App. at 291, 456 S.E.2d at 530-31. Once Banks was accompanied outside to retrieve his shoes, Officer Clements was not justified in remaining in the bedroom to seize Banks' jacket without his request or consent.[12] In short, there was no issue regarding "preservation of human life." Kyer, 45 Va. App. at 480, 612 S.E.2d at 217 (internal quotation marks and citation omitted).

## B. Clothing Exigency Exception

Neither this Court nor the Supreme Court of Virginia has had occasion to consider whether the need to obtain clothing or shoes for an arrestee presents an exigency allowing police to enter the arrestee's home, or seize items within, absent a warrant. In United States v. Kinney, 638 F.2d 941, 945 (6th Cir.), cert. denied, 452 U.S. 918 (1981), the Sixth Circuit Court of Appeals held that an FBI agent's warrantless entry into the defendant's apartment after arresting him outside was not justified by his lack of complete dress or shoes since "[t]he defendant did not request permission to secure additional clothing and did not consent to an entry of his home." Likewise, in United States v. Whitten, 706 F.2d 1000 (9th Cir. 1983), the Ninth Circuit Court of Appeals reversed a district court's order denying the defendant's motion to suppress a gun discovered by police when they made a warrantless entry into his hotel room to retrieve clothing after his arrest. The court noted the defendant did not ask to be allowed to dress until after police took him into the room without his consent. As such, "absent such a 'specific request or consent,' the officers' entry was unlawful." Id. at 1016 (quoting United States v. Anthon, 648 F.2d 669, 675 (10th Cir. 1981) (arrest of suspect, wearing a bathing suit, in hotel hallway did not

---

[12] Since the trial court did not base its ruling on Banks' consent, the general standard of review requiring us to "discard the evidence of the accused in conflict with that of the Commonwealth," Kelly, 41 Va. App. at 254, 584 S.E.2d at 446 (internal quotation marks and citation omitted), does not apply to the issue of Banks' consent. Banks, 280 Va. at 618, 701 S.E.2d at 440. Rather, because the trial court did not expressly resolve the dispute regarding Banks' consent, we are precluded from affirming its decision on this alternative ground. Id.

provide exigent circumstances allowing police to return arrestee to his room), cert. denied, 454 U.S. 1164 (1982)).

On the other hand, the Fourth Circuit Court of Appeals held that an "arrestee's partially clothed status may constitute an exigency justifying the officer's temporary reentry into the arrestee's home to retrieve clothes reasonably calculated to lessen the risk of injury to the defendant." Gwinn v. United States, 219 F.3d 326, 333 (4th Cir. 2000). In Gwinn, an officer re-entered an arrestee's mobile home on the officer's own initiative to obtain boots and a shirt for the arrestee, who was already handcuffed and seated in a police cruiser. When the officer located the boots, he found a gun inside one of them, which the arrestee later moved to suppress. Drawing some support from the community caretaker rationale underlying the United States Supreme Court's decision in Cady,[13] the court found the officer's actions lawful under a "clothing exigency exception." Id. The court cautioned, though, to invoke the clothing exception, "the government bears the burden of demonstrating particularly that the arrestee had a substantial need for the clothing and the government's response was limited strictly to meeting that need." Id. at 335. Noting "that an essential premise for our application of the exception here is the fact that nothing in the record suggests that [the officer's] reason for the reentry was pretextual," id., the court found that "[w]herever Gwinn might walk while in these troopers' custody, he would face the substantial hazards of sustaining cuts or other injuries to his feet, as well as the increasing chill during the evening hours of an early May day." Id. at 333. The court concluded "[t]he interest served by requiring [Gwinn] to put on shoes and a shirt was more than 'the desire of law enforcement officers

---

[13] The court compared the officers' exercise of "custody and control over [the arrestee's] trailer" to the officers' custody and control over the vehicle in Cady.

to complete the arrestee's wardrobe.'" Id. (quoting United States v. Butler, 980 F.2d 619, 621-22 (10th Cir. 1992)). [14]

Other courts have held that police may accompany an arrestee into the home or a room to obtain clothing or shoes such that evidence discovered in plain view therein may be lawfully seized. [15] For example, in United States v. Di Stefano, 555 F.2d 1094 (2d Cir. 1977), a female officer accompanied the arrestee, wearing a nightgown and robe, into her bedroom to dress. When the arrestee opened her closet door, the officer saw evidence, in plain view, connecting the arrestee to a robbery. Rejecting her contention that the officer was not justified in being present in the bedroom, the court explained that "[h]aving permitted [the arrestee] to retire to her bedroom to dress, [the officer] was clearly justified in accompanying her to maintain a 'watchful eye' on her and to assure that she did not destroy evidence or procure a weapon." Id. at 1101. Therefore, the seizure of the evidence was lawful "[s]ince the evidence shows that the officer's entry into the bedroom was solely for the purpose of maintaining control over [the arrestee] while she dressed." Id. [16]

---

[14] See also United States v. Clay, 408 F.3d 214 (5th Cir. 2005) (where arrestee told officer his shoes were in his bedroom, officer's return to bedroom justified by need to procure footwear); United States v. Wilson, 306 F.3d 231 (5th Cir. 2002), overruled on other grounds by United States v. Gould, 364 F.3d 578, 586 (5th Cir. 2004) (*en banc*) (risks associated with transporting the arrestee to police headquarters wearing only underwear justified the officer's warrantless entry to obtain clothing).

[15] Indeed "it is not 'unreasonable' under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety -- as well as the integrity of the arrest -- is compelling." Washington v. Chrisman, 455 U.S. 1 (1982).

[16] See also Butler, 980 F.2d at 621-22 (where police accompanied an arrestee into his home to obtain shoes because the ground outside was strewn with broken glass, beer cans, and other hazards, court held that the entry was justified since the hazards on the ground posed a significant threat to the arrestee's safety); State v. Jenkins, 782 N.W.2d 211 (Minn. 2010) (officers accompanied arrestee to room after he asked to be allowed to retrieve shoes and coat); State v. Weakley, 627 S.E.2d 315 (N.C. App. 2006) (officer accompanied arrestee into home while she dressed).

We do not believe the facts and circumstances of this case justify application of a "clothing exigency exception" to the warrant requirement.  Banks was not shirtless as the arrestee was in Gwinn, 219 F.3d 326, nor clad in his underwear as the arrestee was in Wilson, 306 F.3d 231.  In fact, he was not in a "state of undress" or "partially clothed."  When Banks was arrested, he was fully clothed though he was not wearing shoes.[17]  Furthermore, the officers did not accompany Banks to retrieve his jacket in the scope of monitoring his movements.  See, e.g., Washington v. Chrisman, 455 U.S. 1 (1982); Di Stefano, 555 F.2d 1094; Butler, 980 F.2d at 621-22.  Although the trial court found the officers seized the jacket to protect Banks, it did not find that there was a "substantial need" for additional clothing.  See Gwinn, 219 F.3d at 335.  Nor did it find there was any need to protect Banks from a "substantial risk of injury."  Id. at 333.  And there are no facts in the record to support such conclusions.[18]  In light of this evidence, we find it unnecessary to decide whether a "clothing exigency exception" should be created in Virginia.  See Barrett v. Commonwealth, 250 Va. 243, 248, 462 S.E.2d 109, 112 (1995) (Supreme Court finding it unnecessary to decide whether community caretaker doctrine will be applied in Virginia outside the context of the inventorying of vehicles where evidence insufficient to show need for police assistance).

---

[17] Officer Mitchell may well have been justified in accompanying Banks to obtain his shoes, see Chrisman, 455 U.S. at 7, but the issue before us is whether Banks' state of undress constituted an exigency permitting the seizure of his jacket.

[18] The fact that it was forty-five degrees outside and windy does not, alone, establish that Banks, who was fully clothed, had a "substantial need" for additional clothing to protect him during the transport to the jail via the patrol car.

Therefore, we conclude the trial court erred in holding the officers' need to obtain a jacket for Banks constituted an exigency justifying the warrantless seizure.[19] We reverse the judgment of the trial court, vacate the conviction, and remand for further proceedings if the Commonwealth be so advised.

Reversed.

---

[19] We do not suggest that it is unreasonable for police to obtain additional clothing or outerwear for an arrestee if the arrestee makes a request or consents to the seizure. Nor should our holding be interpreted to imply that an arrestee's state of undress could never constitute an exigency obviating the requirement of a warrant. Rather, we find the facts and circumstances of this case did not present an exigency justifying a seizure that would otherwise be illegal.