**STATE of Maine**

**v.**

**Michael DUBE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 23, 1995.

Decided March 1, 1995.

---

**2.** The court said at Castle's sentencing, "Obviously, probation can't be revoked if she doesn't have any ability to pay."

Michael Cantara, Dist. Atty., Alfred, for the State.

Russell Goldsmith, York, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Michael Dube appeals from his conviction of endangering the welfare of a child, 17–A M.R.S.A. § 554(1)(C) (Supp.1993), entered in the District Court (Springvale, *Janelle, J.*) following Dube's conditional guilty plea. The defendant challenges the District Court's·denial of his motion to suppress as well as the partial affirmance of that denial by the Superior Court (York County, *Cole, J.*). Dube alleges that both courts erred because all of the evidence in question was obtained as a result of an illegal search. We vacate the judgment of conviction.

On July 4, 1993, two officers of the Sanford Police Department responded to a call from the custodian of the apartment building in which defendant lived with his family. Defendant was not at home and the custodian needed to enter the apartment to stop sewage or water from leaking into the apartments below.[1] The custodian had his own key but asked the police officers to accompany him to verify that he was only dealing with the emergency. When they entered the kitchen, the officers were struck with an "incredible smell of urine and feces." There was a puddle of urine on the kitchen floor, and an open diaper containing human feces that appeared to have been walked through by a baby. The feces had been tracked throughout the apartment.

The officers watched the custodian work on the first floor toilet, and then followed him upstairs where they stood on the landing and watched while he worked in the second floor bathroom. The officers saw human feces tracked on the stairs and in the upstairs hall, and more dirty diapers on the floor. From where they stood on the landing, the officers could see into the three bedrooms. In the baby's bedroom and the children's bedroom, they saw clothes strewn on the floor covered with animal and human feces. There were at least 75–100 individual feces "right beside the baby's crib," and a similar number around the bunk beds and more in the hallway.

Officer Beaulieu called the Sanford Police Department to request that the Department of Human Services (DHS) send a caseworker to the apartment. He also radioed for another police unit to bring a camera. The officers asked the custodian to "stand by," and when he finished with the repairs the custodian waited on the sidewalk. About five minutes later, two officers arrived with a camera and Officer Beaulieu took pictures of parts of the apartment, and then went outside to wait with the custodian. When two DHS workers arrived, they were shown around the apartment by Officer Beaulieu. Thereafter, defendant and his family returned home, and he was charged with endangering the welfare of a child pursuant to 17–A M.R.S.A. § 554(1)(C) (Supp.1993).

After arraignment, defendant filed a motion to suppress all evidence obtained by the

---

1. The custodian's entry is authorized by a statute which provides in pertinent part: "Except in the case of an emergency or if it is impractical to do so, the landlord shall give the tenant reasonable notice of his intent to enter and shall enter only at reasonable times. Twenty-four hours is presumed to be reasonable notice in the absence of evidence to the contrary." 14 M.R.S.A. § 6025(2) (Supp.1993).

officers. The District Court denied the motion. Defendant entered a conditional guilty plea, and appealed the denial. The Superior Court reversed the District Court "on all evidence seized after the Police Officer left with [the custodian] but denie[d] the motion to suppress to that point in time...." Defendant now appeals the Superior Court's partial denial of his motion.

■■■ When the Superior Court acts as an intermediate appellate court, we review the decision of the trial court directly. *Noyes v. Noyes*, 617 A.2d 1036, 1037 (Me. 1992). A ruling on a motion to suppress based on uncontroverted facts involves a legal conclusion that we review independently on appeal. *State v. Hill*, 606 A.2d 793, 795 (Me.1992); *State v. Cloutier*, 544 A.2d 1277, 1280 (1988).

■■■ Defendant argues that the initial entry into the apartment by the police officers was unlawful and a violation of the fourth amendment proscription against unreasonable searches. Defendant asserts that the officers knew that the custodian had no authority to consent to a search. Under these circumstances, defendant argues, the officers were required to contact defendant and obtain his consent before entering. We disagree.

Although defendant is correct that the custodian had no authority to consent to a search, his claim is irrelevant because it rests on the mistaken characterization of the officers' entry and observation as a search. We have held that when an officer is lawfully on the premises, observations made by means of his natural senses, from his natural vantage point, with no attempt to enhance his view, do not constitute a search for fourth amendment purposes. *State v. Cloutier*, 544 A.2d 1277, 1279–1280 (Me.1988)[2]. *See also State v. Sapiel*, 432 A.2d 1262, 1266 (Me.1981). We have also noted that a police officer has a "legitimate role as a public servant to assist those in distress and to maintain and foster public safety." *State v. Pinkham*, 565 A.2d

318, 319 (Me.1989). Local police officers frequently engage in "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.*

In this case, the custodian had a statutory right to enter the apartment in response to an emergency, and the court found that it was reasonable for the police to accompany him. During the time that the officers were on the premises performing a lawful police function, their observations, made with their natural senses, without acting to enhance their view, do not constitute a search for the purposes of the fourth amendment.

■■■ Defendant next argues that even if the officers' initial entry was lawful, their continued presence at some point became unlawful. We agree. Although the officers were lawfully on the premises during the time the custodian was dealing with the plumbing emergency, their continued presence after the repairs were completed was unlawful unless justified by one of the exceptions to the warrant requirement. *See Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The State concedes that once the repairs were complete, the officers' presence inside the apartment is justifiable only if protecting the children from being returned to squalid conditions can be considered an exigent circumstance. Exigent circumstances exist when there is a compelling need to conduct a search and insufficient time in which to secure a warrant. *See State v. Smith*, 593 A.2d 210, 212 (Me.1991). The facts of this case do not support a finding of exigent circumstances. Because the children were not present in the apartment, there was no immediate threat to their safety.

■■■ The District Court held that the photographs "only recorded what was in plain sight." Although that is undoubtedly correct, the photographs were taken after the custodian had finished his repairs. On ap-

---

**2.** In *Cloutier*, we refer in a footnote to the "inadvertency" requirement of the plain view doctrine. *Cloutier*, 544 A.2d at 1281 n. 4. The U.S. Supreme Court subsequently held that inadvertency is not a requirement for a plain view seizure.

*Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). This ruling, however, does not invalidate the *Cloutier* holding because inadvertency was not an issue in that case.

peal, the Superior Court suppressed "all evidence seized after the Police Officer left with [the custodian]." The line drawn by the Superior Court ignores the fact that once the repairs were complete, the justification for the presence of the police in the apartment ceased. The record suggests that the photographs were taken after the repairs had been completed. If this is true, those photographs, along with any other evidence gathered after the repairs were completed, must be suppressed. Any evidence gathered before the repairs were completed is not subject to exclusion. We are required to vacate the judgment and, on remand, the defendant will be entitled to consider withdrawing his conditional guilty plea pursuant to M.R.Crim.P. 11(a)(2).

The entry is:

Judgment of conviction vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.