COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
 Argued at Alexandria, Virginia


TYRONE EDGAR WATERS

                                        MEMORANDUM OPINION[*] BY
v.      Record No. 2239-95-4            JUDGE CHARLES H. DUFF
                                          NOVEMBER 5, 1996
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                        Thomas D. Horne, Judge

            Lorie E. O'Donnell, Assistant Public Defender
            (Office of the Public Defender, on brief),
            for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.



     Tyrone Edgar Waters (appellant) was convicted, on his

conditional guilty pleas, of possession of cocaine and carrying a

concealed weapon.  Appellant contends that he was illegally

seized by the police officer and, therefore, the evidence

obtained from him was inadmissible.  We disagree and affirm the

convictions.

                                I.

     On March 8, 1994, Detective Ricky Frye of the Leesburg

Police Department was on patrol at the Loudoun House apartment

complex, an area known for high drug traffic.  At around 10:15

p.m., Frye saw appellant in the apartment parking lot.  Appellant

was "very unsteady" on his feet, and Frye was concerned for

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

appellant's safety.

Frye followed appellant, tapped him on the shoulder, and asked to speak to him.  At that point, Frye could smell a strong odor of alcohol on appellant and appellant immediately began making threatening gestures toward Frye, including flailing his arms.  Frye saw a bulge, consistent with a concealed handgun, on appellant's left side.  He asked appellant to consent to a search.  Appellant responded, "sure, I don't mind if you search me," and began emptying his pockets of his own accord.  During a pat down search, Frye felt a gun and seized it.[1]  A further search revealed a corncob pipe which smelled of marijuana and ultimately was shown to contain cocaine residue.  Appellant told Frye that he had received the gun from his brother earlier that night and that he used the pipe to smoke marijuana.

At the suppression hearing, Frye testified that he confronted appellant because he was concerned for appellant's welfare, and he sought to search appellant because appellant had made threatening gestures and had the suspicious bulge.

Michael Hughes testified for appellant that he and appellant were sitting on steps when Frye approached and "jacked" appellant up off the steps, put him against a wall, told appellant and Hughes they could not leave, and searched both men without asking for their consent.  Appellant testified that Frye did not ask for permission to search and stated that Frye told him "not to go

[1]The gun was a carbon dioxide gas powered BB gun.

-2-

nowhere." Appellant admitted that he emptied his pockets on his own.

Following the suppression hearing, the trial judge issued a letter opinion granting the motion to suppress. In the opinion, the judge found that the initial encounter between Frye and appellant constituted a seizure. The judge wrote:

> When a person is followed by a police officer, approached, and tapped on the shoulder by the officer, a reasonable person would not feel at liberty to walk away. This seizure does not fall outside of Fourth Amendment protections on this basis.

The judge also rejected the community caretaker doctrine as a basis for the stop, finding that the doctrine was limited to incidents involving automobiles and would be inapplicable in this case, in any event, because it was unreasonable for Frye to stop appellant based upon his unsteadiness on his feet and apparent intoxication.

The Commonwealth appealed the trial judge's decision to grant the suppression motion. This Court reversed in Commonwealth v. Waters, 20 Va. App. 285, 456 S.E.2d 527 (1995). We stated that, assuming without deciding that Frye seized Waters, the initial contact "was valid as a reasonable community caretaker action." Id. at 288, 456 S.E.2d at 529. Appellant thereafter entered conditional guilty pleas to charges of possession of cocaine and possession of a concealed weapon.

II.

Frye's initial encounter with appellant, where the officer

-3-

simply followed him, tapped him on the shoulder, and asked to

talk to him and search him, did not constitute a seizure under

the Fourth Amendment.  Appellant responded aggressively to Frye,

who saw the suspicious bulge on his hip.  After receiving

permission to search, Frye discovered the contraband.  At that

point, Frye seized appellant.

> [N]ot all personal intercourse between
> policemen and citizens involves "seizures" of
> persons.  Only when the officer, by means of
> physical force or show of authority, has in
> some way restrained the liberty of a citizen
> may we conclude that a "seizure" has
> occurred.

Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  A consensual

encounter between a police officer and a citizen has no Fourth

Amendment implications unless it is accompanied by coercion or a

show of authority which would cause the individual reasonably to

believe that he must comply with the officer's requests and may

not leave.  Greene v. Commonwealth, 17 Va. App. 606, 610, 440

S.E.2d 138, 140 (1994).

In Baldwin v. Commonwealth, 243 Va. 191, 413 S.E.2d 645

(1992), instead of tapping the defendant on the shoulder, the

officer called to the defendant and shined a bright light on him.

The Supreme Court found that Baldwin was not seized until the

officer discovered evidence of intoxication and arrested him.

Id. at 199, 413 S.E.2d at 650.

In Baldwin, the Court cited United States v. Burrell, 286

A.2d 845 (D.C. App. 1972).  In Burrell, no seizure occurred where

an officer placed his hand on the defendant's elbow and asked to speak to him.  The court noted that the officer "merely touched appellee's elbow, an action used as a normal means of attracting a person's attention."  Id. at 846.  Likewise, Frye's action of tapping appellant on the shoulder was a normal means of attracting appellant's attention.  Moreover, Frye's asking if he could speak to appellant, and asking for permission to search, did not transform the consensual encounter into a seizure.  See Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989).

### III.

The evidence of historical fact presented at the suppression hearing was in dispute.  Appellant's witness testified that Frye "jacked" appellant off of steps, threw him against a wall, and told appellant and Hughes that neither could leave.  Frye testified that he followed appellant, tapped him on the shoulder, and asked to speak to him.  Frye testified that he told appellant he could not leave, only after finding the gun.

The trial judge did not accept appellant's version of what occurred.  Rather, the judge found that by following appellant and tapping him on the shoulder (Frye's version), Frye seized appellant within the meaning of the Fourth Amendment.  Contrary to appellant's argument, the judge's finding that a seizure occurred is not a finding of fact, but involves a mixed question of law and fact, and therefore is subject to de novo review by

this Court.

In <u>Ornelas v. United States</u>, 116 S. Ct. 1657 (1996), the Supreme Court distinguished between a trial court's finding of historical facts and the application of law to those facts. The Court held that a trial court's findings of historical fact are reviewed only for clear error, while mixed questions of law and fact, such as the ultimate question of reasonable suspicion and probable cause, are reviewed <u>de</u> <u>novo</u>. <u>Id.</u> at 1662.

Upon such a <u>de</u> <u>novo</u> review, we conclude that the officer did not seize appellant until after he discovered the contraband.[2] The evidence and statements, therefore, were not the fruit of an illegal seizure, and appellant is not entitled to relief.

We affirm the judgment of the trial court.

<u>Affirmed.</u>

---

[2]We are not precluded from finding that no seizure occurred by our earlier application of the community caretaker doctrine in the pretrial appeal. In <u>Commonwealth v. Waters</u>, 20 Va. App. 285, 288, 456 S.E.2d 527, 529 (1995), we held <u>"[a]ssuming without deciding that [Waters] was seized by Frye</u>, we agree with the Commonwealth that, under these facts, Frye's initial contact with [Waters] was valid as a reasonable community caretaker action." (Emphasis added.) In that opinion, we did not make a finding on the seizure question. Upon review of the issue in this appeal, we find that Frye's initial contact with Waters did not constitute a seizure.