COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Alston and Senior Judge Clements
Argued at Richmond, Virginia


CARL ANTHONY FITZGERALD

                                                  MEMORANDUM OPINION[*] BY

v.      Record No. 2030-08-3                  JUDGE LARRY G. ELDER
                                                      NOVEMBER 3, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

      S. Jane Chittom, Appellate Defender (Patricia P. Nagel, Assistant
      Appellate Defender II; Office of the Appellate Defender, on briefs),
      for appellant.

      John W. Blanton, Assistant Attorney General (William C. Mims,
      Attorney General, on brief), for appellee.


Carl Anthony Fitzgerald (appellant) appeals from his bench trial conviction for

possession of a firearm by a convicted felon. On appeal, he contends the trial court erroneously

found that (1) the encounter that led to the discovery of firearms in the vehicle in which appellant

had been a passenger did not violate the Fourth Amendment and (2) that the evidence was

sufficient to prove he possessed the firearms. We hold the evidence supports the trial court's

determination that no Fourth Amendment violation occurred and that the evidence was sufficient

to prove appellant constructively possessed the firearms. Thus, we affirm his conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

A.

MOTION TO SUPPRESS

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc); see McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001). However, we review de novo the trial court's application of defined legal standards, such as whether the police had reasonable suspicion or probable cause for a search or seizure. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996). Our review of the existence of probable cause or reasonable suspicion involves application of an objective rather than subjective standard. See, e.g., Whren v. United States, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 97-98 (1996); see also Robinson v. Commonwealth, 273 Va. 26, 35-38, 639 S.E.2d 217, 222-24 (2007).

Fourth Amendment jurisprudence recognizes three categories of police-citizen contact: "(1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). Consensual encounters "'need not be predicated on any suspicion of the person's

involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)). "'As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.'" Greene v. Commonwealth, 17 Va. App. 606, 610, 440 S.E.2d 138, 140 (1994) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980)).

"A seizure occurs when an individual is either physically restrained or has submitted to a show of authority." McGee, 25 Va. App. at 199, 487 S.E.2d at 262. "Whether a seizure has occurred . . . depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." Id. at 199-200, 487 S.E.2d at 262.

> Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. The decision whether the encounter was consensual must be made based on the totality of the circumstances.

Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003) (citations omitted). As the Virginia Supreme Court has recently observed in this context,

> There is good reason for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated. Moreover, they involve consideration of nuances such as tone of voice, facial expression, gestures and body language seldom discernable from a printed record. The controlling inquiry [in determining whether a person was seized] is

the effect of such matters on a reasonable person in the light of all the surrounding circumstances.

Malbrough v. Commonwealth, 275 Va. 163, 171, 655 S.E.2d 1, 5 (2008).

An officer may effect a Terry stop, i.e., a seizure constituting a "brief, minimally intrusive investigatory detention[]," Wechsler, 20 Va. App. at 169, 455 S.E.2d at 747 (citing Terry, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889), if he becomes aware of facts that "lead[] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it, Terry, 392 U.S. at 30, 88 S. Ct. at 1884, 20 L. Ed. 2d at 911, or that the detainee "'is otherwise subject to seizure for violation of the law,'" see Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (quoting Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979)). "[T]he likelihood of criminal activity [required for a Terry stop] need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 751, 151 L. Ed. 2d 740, 750 (2002). Nevertheless, an "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch."'" Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570, 576 (2000) (quoting Terry, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909); see Arvizu, 534 U.S. at 274, 122 S. Ct. at 751, 151 L. Ed. 2d at 750.

An officer who develops such reasonable suspicion concerning a person may stop that person "in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information" in order to confirm or dispel his suspicions. Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705, 711 (1985). In the course of a valid Terry stop, an officer may draw his weapon and handcuff the detainee without converting the encounter into an arrest. See Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

- 4 -

Whether an officer has reasonable suspicion for a <u>Terry</u> stop is based on an assessment of the totality of the circumstances, "which includes 'the content of information possessed by police and its degree of reliability,' i.e., 'quantity and quality.'" <u>Jackson</u>, 267 Va. at 673, 594 S.E.2d at 599 (quoting <u>Alabama v. White</u>, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990)). Reasonable suspicion "need not rule out the possibility of innocent conduct." <u>Arvizu</u>, 534 U.S. at 277, 122 S. Ct. at 753, 151 L. Ed. 2d at 7.

We have also recognized the emergency aid doctrine and the community caretaker doctrine, which are overlapping in nature. The former permits law enforcement officers to engage in properly circumscribed searches or seizures without violating the Fourth Amendment "when someone's health or physical safety is genuinely threatened," and the latter "recognizes that 'police owe duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis.'" <u>Kyer v. Commonwealth</u>, 45 Va. App. 473, 480-81, 612 S.E.2d 213, 217 (2005) (en banc) (quoting <u>Reynolds v. Commonwealth</u>, 9 Va. App. 430, 436-37, 388 S.E.2d 659, 663-64 (1990)). Although our prior case law may have implied that neither of these doctrines legitimizes a search that is objectively reasonable but pretextual, <u>see, e.g.</u>, <u>Commonwealth v. Waters</u>, 20 Va. App. 285, 290, 456 S.E.2d 527, 530 (1995); <u>Reynolds</u>, 9 Va. App. at 437, 438, 388 S.E.2d at 664, the Supreme Court has implicitly overruled those holdings, <u>see</u> <u>Brigham City v. Stuart</u>, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650, 657-58 (2006) (holding that as long as a search is objectively reasonable under the emergency aid doctrine, it does not violate the Fourth Amendment); <u>see also</u> <u>Kyer</u>, 45 Va. App. at 481 n.2, 612 S.E.2d at 217 n.2 (holding question of whether officers entered the defendant's residence under a pretext that an emergency existed was not relevant under the applicable test of objective reasonableness). Thus, regardless of whether a particular search or seizure is viewed as

a criminal investigation, on the one hand, or an emergency or community caretaking function on the other, the analysis under the Fourth Amendment is the same—"An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' The officer's subjective motivation is irrelevant." Stuart, 547 U.S. at 404, 126 S. Ct. at 1948, 164 L. Ed. 2d at 658 (quoting Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168, 178 (1978) (emphasis added)).

Thus, here, whether the officers were acting pursuant to their emergency aid or community caretaking functions, as the trial court found, or were investigating possible criminal activity, or both, is not dispositive. Rather, the dispositive question, which was addressed by the trial court, was whether the officers acted reasonably under all the circumstances.

The evidence, viewed in the light most favorable to the Commonwealth, supports a finding that Officer Robert Jones' initial contact with appellant was consensual and did not constitute a seizure. Appellant testified that before Officer Jones approached the red vehicle in which he and Kareem Adkins had been riding, Adkins, the driver, had stopped the vehicle in the well-lighted driveway of a warehouse, and appellant got out to look at the car's tires to see if one was flat. As Officer Jones approached the red vehicle in his marked police car, neither his flashing lights nor his siren had been activated, and Officer Jones brought his car to a stop in a position twenty to thirty feet away from the red car in a fashion that did not restrict its movement. Officer Jones exited his vehicle and "*asked* [the two men] if everything was okay" and "what was going on." (Emphasis added). This evidence supports the trial court's finding that the encounter began as a consensual one. The evidence also supports a finding that the arrival of Lieutenant Mark Gilbert did not change the consensual nature of the encounter. Although the record does not make clear precisely when Lieutenant Gilbert arrived, he, like

Officer Jones, did not use his lights or siren, and he remained in his police car during most of the encounter in order to serve as back up if necessary.

The record also supports a finding that, at the same time or a little before Officer Jones inquired whether "everything was okay," he received important information over his police radio. That information indicated, based on the license tag number Officer Jones had called in immediately before stopping, that the red car appellant and Adkins had been traveling in had "a missing person attached to it." Officer Jones learned that the vehicle's owner was a woman who resided in Madison, North Carolina, and she had reported the car and a man named Donald Carter were missing. Upon receiving that information, Officer Jones had reasonable suspicion to detain appellant and Adkins to identify them and to inquire about the missing person. Assuming without deciding Officer Jones detained the two men, the detention was reasonable based on undisputed evidence that the officers were attempting to contact the car's owner for more details about the missing person and to find out whether appellant and Adkins were authorized to have and retain the red car. Further, Officer Jones testified that it was "*[w]hile*" they were trying to "make contact with the owner of the car to see if [Adkins and appellant] were going to be able to drive the vehicle away" that he walked to the driver's side of the vehicle to check the tires and, through the window on the driver's side, saw the firearms in plain view on the floorboard. (Emphasis added). Officer Jones' testimony supported the trial court's express finding that he spotted the firearms on the front floorboard of the red car "*[w]hile* [the officers] were waiting for information from the owner of the vehicle," notwithstanding appellant's testimony that the officers had already spoken to the car's owner when Officer Jones saw the firearms. (Emphasis added). The firearms were in plain view while Officer Jones stood in a public location beside the car where he had every right to be in the course of his duties. See generally Horton v. California,

496 U.S. 128, 133-35 & n.5, 110 S. Ct. 2301, 2306-07 & n.5, 110 L. Ed. 2d 112, 120-22 & n.5 (1990).

Although finding the weapons in plain view in the car provided Officer Jones with reasonable suspicion to believe appellant possessed a firearm, this possession, *standing alone*, did not provide a sufficient basis for initiating a Terry stop or prolonging a detention already underway. "Absent some disqualifying status (being a felon, juvenile, or drug possessor) or situs (being in a place where weapons are forbidden), it is not a crime to possess a weapon." Jackson v. Commonwealth, 41 Va. App. 211, 231, 583 S.E.2d 780, 790 (2003) (en banc), rev'd on other grounds, 267 Va. 666, 594 S.E.2d 595 (2004). Also, nothing in the record indicated appellant was carrying the firearm in a legally proscribed manner, such as in a concealed fashion without a permit. See Code § 18.2-308.

Further, the record fails to reveal how much time elapsed between the discovery of the firearms and Officer Jones' learning from the car's owner that the person reported missing was not, in fact, missing and that the car had not been stolen. Because the Commonwealth bore the burden of proving the reasonableness of the ongoing seizure and the record fails to indicate whether the officers learned of appellant's status as a convicted felon before or after speaking to the vehicle's owner and learning the two men had committed no crime associated with the possession of the vehicle, we examine whether the evidence *other than* appellant's possible criminal involvement with the missing person and vehicle was sufficient to justify the ongoing detention of appellant until the officers learned of his status as a convicted felon.

We hold the totality of the circumstances already known to Officer Jones, not including appellant's involvement with the possible missing person, viewed in the light most favorable to the Commonwealth, justified the additional detention of appellant, during which the officers simultaneously investigated appellant's possible illegal possession of the firearms. The evidence

- 8 -

indicated Officer Jones first encountered the vehicle in which appellant and Adkins were traveling in the early morning hours of November 28, 2007, while Jones was "sitting in . . . the parking lot of one of the car lots" where several recent break-ins had occurred. Officer Jones saw the driver of the red vehicle behaving oddly, remaining stopped in the car for a period of time at a stop sign, where the car "sat . . . for a little bit" although no other cars were in the area. Jones then observed appellant, the passenger, get out of the red car and "walk[] away from it towards one of the parked cars nearby" as the red car circled around and drove into the parking lot of a warehouse or metal works business located near an auto body shop.

Although appellant and Adkins reported to Officer Jones that they were examining the vehicle's tires and thought they had a flat, when Officer Jones had initially seen appellant get out of the red vehicle, he had walked away from the car rather than toward it, and he returned only when Officer Jones pulled up to the red vehicle in his police car. Further, when appellant returned to the red vehicle, in which he had been the passenger, he approached the open driver's door and closed it, which supports an inference that he may have been attempting to keep Officer Jones and Lieutenant Gilbert from seeing the firearms on the floorboard. Finally, when Officer Jones examined the vehicle around the time he spotted the firearms, he saw nothing to indicate "anything mechanically wrong with the vehicle" or its tires. This evidence, viewed in its entirety, provided Officer Jones with reasonable suspicion to believe appellant and Adkins may have been criminals who were planning to break into the body shop adjacent to where they had stopped the red vehicle and justified Officer Jones' ongoing detention of appellant for a period long enough to confirm or dispel his suspicions. Cf. United States v. Perkins, 363 F.3d 317, 319-20, 327-28 (4th Cir. 2004) (holding that where an informant reported "two men were pointing rifles in various directions in the front yard of a duplex well known for drug activity in a high crime and drug trafficking area," although "openly carry[ing] a firearm" was not illegal in

the jurisdiction, once an officer confirmed the presence of a car matching the description given by the informant and observed that the car was occupied by a known drug user, he had reasonable suspicion to stop the vehicle to investigate further, at which time he saw a "loaded, high-powered rifle lying in plain view in an open gun case on the back seat" and the defendant "openly volunteered that he had a felony conviction"); United States v. Lenoir, 318 F.3d 725, 729-30 (7th Cir. 2003) ("Carrying . . . weapons may not be a crime in Indiana, but the police can still factor this otherwise innocent behavior into the [reasonable suspicion] equation."). Almost immediately thereafter, while the evidence supported the lawful detention of appellant for investigation of the possible break-in attempt, a criminal records check revealed that appellant's possession of the firearms was illegal, thereby providing probable cause for arrest.

B.

SUFFICIENCY OF THE EVIDENCE TO PROVE POSSESSION OF FIREARMS

Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below. E.g. Baldwin v. Commonwealth, 274 Va. 276, 278, 645 S.E.2d 433, 433 (2007). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it. E.g. Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005).

Here, the trial court noted that "[i]f the Commonwealth were pursuing this case solely on the theory of actual possession, that might be problematic . . . [because] [t]he statement of [appellant concerning whether he handled the firearms] requires certain inferences . . . [and is] a bit equivocal." The court further observed, though, that "it appears the Commonwealth is

proceeding on the theory of constructive possession," and the court analyzed the evidence on that basis. Because the trial court either found the evidence was not sufficient to prove actual possession or refrained from making a finding on this issue, we analyze the sufficiency of the evidence to support appellant's conviction based on constructive possession of the firearms by appellant.

A conviction for the unlawful possession of a firearm

> can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary. To establish constructive possession of the firearm by a defendant, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm.

Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (quoting Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006)) (citations omitted). "'Possession . . . need not always be exclusive. The defendant may share it with one or more persons[,]' and 'the duration of possession is immaterial.'" Grier v. Commonwealth, 35 Va. App. 560, 570, 546 S.E.2d 743, 748 (2001) (quoting Gillis v. Commonwealth, 215 Va. 298, 301-02, 208 S.E.2d 768, 771 (1974) (applying these principles to the possession of drugs)).

Here, the presence of two firearms in plain view on the driver's floorboard of the car, coupled with appellant's actions and statements to Officer Yaple following his arrest, were sufficient to prove he constructively possessed the firearms. Although the red car did not belong to appellant or Adkins, appellant admitted he saw the handguns before he got into the vehicle, at a time when the guns were on the car's seat. Appellant admitted he "look[ed] at" the guns and specifically discussed them with Adkins before Adkins placed them on the driver's floorboard.

Appellant became a passenger in the vehicle with full knowledge that the guns were in the vehicle within easy reach of both occupants. Further, after appellant exited the vehicle at a stop sign and Adkins brought the vehicle to a stop nearby, Adkins got out of the driver's side and met Officer Jones on the vehicle's passenger side. Appellant, although he had been merely a passenger in the vehicle, walked up to the driver's side door of the vehicle, which Adkins had left open, and closed it. This evidence supported the inference that appellant was exercising further dominion and control over the weapons in an effort to keep the police officers from discovering them.

Thus, appellant's admissions regarding his knowledge of the presence of the firearms, coupled with his actions in getting into the car with that knowledge and closing the driver's door when the police arrived on the scene, provided sufficient evidence to prove appellant was aware of the presence and character of the firearms and that they were subject to his dominion and control. See Logan v. Commonwealth, 19 Va. App. 437, 444-45, 452 S.E.2d 364, 369 (1994) (en banc) (holding evidence that the defendant was alone in and controlled the car in which the police found a concealed firearm, which the defendant said belonged to his girlfriend, was sufficient to prove he was aware of the presence and character of the firearm and that it was subject to his dominion and control, and that "[t]he fact that the gun may have been his girlfriend's was of no consequence").

## II.

For these reasons, we hold the evidence supports the trial court's determination that no Fourth Amendment violation occurred and that the evidence was sufficient to prove appellant constructively possessed the firearms. Thus, we affirm his conviction.

Affirmed.