# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Raashon Aziz

June 28, 2013

Case No. 13-3-01

By Judge Edward L. Hogshire

Defendant Raashon Aziz, having been indicted for being a violent felon in possession a firearm, has filed a Motion to Suppress evidence of any and all firearms, ammunition, and related physical evidence. Defendant alleges that such evidence was obtained through an unreasonable search and seizure and in violation of his rights as guaranteed under the Fourth Amendment to the U.S. Constitution. The motion was heard *ore tenus* on May 24, 2013. Having considered the evidence presented, along with legal memoranda and the arguments of counsel, for the reasons stated below, the Court will deny Defendant's Motion to Suppress.

## Statement of Facts

The statement of facts is derived from the testimony presented at the May 24, 2013, hearing.

The facts adduced at the evidentiary hearing revealed that, on the morning of November 23, 2012, Defendant was asleep in his car that was parked at a gas pump at the BP station on Fontaine Avenue. Motion Hearing Transcript, 9, May 24, 2013. At approximately 7:10 a.m., the 911 operator dispatched officers G. E. Wade and C. N. Bowman of the Charlottesville Police Department to the scene. *Id.* at 33. The operator explained that there was a Suburban parked at the gas pump with loud music coming from it. *Id.* Additionally, there was a non-responsive male, later identified as the Defendant, in the vehicle, and there was a firearm potentially involved. *Id.* at 37. Both officers testified that, when they arrived at the scene they did not have any suspicion that criminal activity had occurred or was occurring. *Id.* at 52, 69. However, given the nature of the facts from the dispatcher, specifically with respect to the firearms, the officers cautiously approached

the vehicle. *Id.* at 37. Officer Wade noted that there was loud music emanating from the vehicle, the driver's seat was in the reclined position, the driver's side window was rolled down, and the Defendant appeared to be asleep in the driver's seat. *Id.* As the officers continued to approach, they were able to obtain a better view of the inside of the vehicle and to confirm the presence of two guns. *Id.* at 40-41. There was a black semi-automatic handgun resting on the center console, and there was a shotgun facing downwards in the passenger-side floorboard. *Id.* Officer Wade testified that the Defendant's arm was resting on the passenger seat and that his hand was very close to the butt of the shotgun. *Id.* at 41. And the handgun was located just to the right of the driver's thigh. *Id.*

After observing the weapons, Officer Wade attempted to rouse the Defendant by shouting at him, several times, through the open window. *Id.* at 45. The Defendant did not respond. *Id.* At that time, Office Wade determined it would be necessary to make physical contact with the person, and he was concerned that the Defendant would be startled upon waking up and potentially discharge one of the guns. *Id.* at 45. Officer Wade analogized the situation to DUI stops that he had experienced where the motorist was asleep and was startled by being woken up. *Id.* at 43. Moreover, he testified that the police officers are trained to be cautious when making initial contact in situations of this nature, because of the uncertainty about how a person will react when you wake them up. *Id.* at 43. As a result of these concerns, Officer Bowman seized the weapons and placed them in the trunk of his vehicle prior Officer Wade making physical contact with the Defendant. *Id.* at 66. Finally, the officers were able to wake the Defendant by turning down the radio, shouting at him, and physically shaking him. *Id.* at 47.

## Issue Presented

Whether the seizure of the guns was a violation of the Defendant's right against unreasonable searches and seizures and, therefore, should be excluded.

## Law

The Fourth Amendment protects people from unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576, 582 (1967). Under the reasonableness inquiry, there is a strong preference for the issuance of a warrant prior to a search and seizure. *Ornelas v. United States*, 517 U.S. 690, 698, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996). However, given the facts of the present case, it is necessary to consider whether there is an exception that would permit a warrantless search and seizure in a situation where there is no suspicion of criminal activity. The most relevant exception is the community caretaker

doctrine.[1] *Commonwealth v. Waters*, 20 Va. App. 285, 289, 456 S.E.2d 527, 529 (1995). This doctrine permits an officer to conduct warrantless investigative seizures when it is totally divorced from the detection of a crime and as long as the seizure is reasonable. *Id*.

> The duty of the police embraces the function of maintaining public order and providing necessary assistance to persons in need or distress. An officer who harbors a reasonable and articulable suspicion, based upon observed facts or a credible report, that a citizen is in distress or in need of assistance, may lawfully effect an appropriately brief and limited seizure for the purpose of investigating that suspicion and rendering aid.

*Waters*, 20 Va. App. at 290, 456 S.E.2d at 529.

When assessing the reasonableness of the seizure, the court must first determine whether it was objectively reasonable, based on the totality of the circumstances, for the officer to believe that his initial actions were necessary either to aid the defendant or for the protection of (1) an owner's property while it is in police custody, or (2) the police against claims or disputes concerning lost or stolen property, or (3) the public and the police from physical danger. *Kyer v. Commonwealth*, 43 Va. App. 603, 618, 601 S.E.2d 6, 13 (2004). Second, the seizure must be for the purpose of providing aid, and the intrusion must be limited. *Id*. Finally, the court must ensure that the community caretaker function is not being used as a pretext to investigate criminal conduct. *Id*. All three requirements must be fulfilled in order to apply the community caretaker doctrine, but the objective reasonableness requirement is the "linchpin of determining the validity of an action." *Waters*, 20 Va. App. at 290, 456 S.E.2d at 529.

Virginia courts have assessed a variety of fact patterns to determine when the evidence is sufficient to satisfy the "linchpin" element. Typically, evidence of the defendant's car being parked on the side of the road or being driven on the side of the road is not adequate, in and of itself, to generate a reasonable belief that assistance was needed. *Barrett v. Commonwealth*, 250 Va. 243, 462 S.E.2d 109 (1995) (holding that there was no reasonable indication that assistance was needed when a truck was moving with its wheels partially in a private yard); *Commonwealth v. Geoffrey Andrew Peterson*, No. CR07001470-00, 2008 Va. Cir. LEXIS 114 (Roanoke Sept. 4, 2008) (holding that there was no reasonable indication that help was necessary when the defendant's car was parked on the side of the road at

---

[1] The Court will not address Plaintiff's "Terry stop" argument other than to point out that both officers testified that they did not suspect any criminal activity when they began to investigate the scene. Mot. Hr'g Tr. at 56, 69. In order for *Terry v. Ohio* to be applicable, it is necessary that the officers initially suspect criminal activity occurred, is occurring, or will occur. 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

approximately 4:30 in the morning, the interior lights were on and then went off, and the car's emergency lights were on and later went off). Conversely, the Court of Appeals of Virginia found that reasonable suspicion did exist when the behavior of the defendant indicated that he was intoxicated or ill. *Waters*, 20 Va. App. 285, 456 S.E.2d 527 (holding that there was a reasonable indication that the defendant appeared potentially intoxicated, ill, or in need of assistance, when he was swaying and walking unsteadily). Therefore, the specific circumstances of each case are vital for the court's determination of whether the officer's initial conduct was reasonable.

## *Application*

Turning to the facts of the present case, first, the Court must evaluate the objective reasonableness requirement to decide if there was a reasonable and articulable suspicion that the Defendant was in need or distress that would support the officers' initial contact. In evaluating this prong, several facts are relevant. First, dispatch reported to the officers that there was cause for concern because the Defendant, sitting in the Suburban, appeared to be unresponsive. This information initially alerted the officers to the fact that they might need to render aid because they were specifically sent to evaluate the Defendant. Second, even dispatch's report alone was insufficient; the officers were able to confirm that the Defendant was unresponsive when they arrived at the scene. The officers noticed that there was very loud music coming from within the car and that it did not appear to be disturbing the Defendant. Moreover, the officers themselves were unable to rouse the defendant by shouting at him multiple times through the open window. The Court finds that these facts, taken as a whole, satisfy the first prong because it was objectively reasonable to believe that the Defendant was not simply sleeping, but that he was in need of assistance.

Defendant argues that this case is analogous to prior cases involving vehicles on the side of the road in which other courts held that there was no reasonable belief that aid was needed. The Court does not agree. In cases such as *Barrett* and *Peterson*, it was the unusual location of the vehicles that prompted the investigation. No other facts were provided to support the contention that the defendants were in distress or need of aid. In this case, additional evidence was provided. The officers were dispatched to specifically check on the Defendant due to concern from witnesses. Additionally, similar to *Waters*, the unusual behavior of the Defendant motivated the police to assist. In *Waters*, the defendant was observed walking unsteadily at night which prompted the police officer's actions to determine whether the defendant was ill, intoxicated, or in need of assistance. Similarly, in the present case, it was the non-responsive behavior of the Defendant that gave the police a reasonable belief that he was in need of aid.

Next, it is necessary to decide if the seizure of the weapons was reasonable and necessary to render aid to the defendant and if it was a limited seizure. The removal of the guns was essential because it allowed for the offices to safely provide assistance. Officer Wade testified that he realized they would need to turn down the music and potentially shake the defendant to awaken him. Officer Wade analogized this case to DUI stops where the police must wake up the motorist. In those instances, it was Officer Wade's experience that it was not unusual for the person to wake up and be very startled. As a result, the confiscation of the firearms was necessary to ensure that neither the Defendant, nor the officers, nor the occupants of the BP station were injured by a potential discharge of the weapons if the Defendant jolted awake. The seizure was also limited because it merely required the officers to seize the guns while they tended to the Defendant. Given the officers' concerns and the relatively limited intrusion, the Court finds that the second requirement of the community caretaker doctrine is satisfied.

Finally, the Court does not find that this exception was used as a pretext to investigate criminal activity. There was no testimony presented that suggested that the officers were concerned about a history of criminal activity at that location or that they had knowledge that the Defendant was responsible for any criminal behavior. On the contrary, the officers testified that they were not aware of any criminal conduct attributable to the Defendant while they were at the scene initially, during the investigation, or when weapons were seized. It was not until after the officers were able to wake the Defendant, obtain his name, and determine that he was a convicted felon, that the existence of a crime became apparent. Therefore, the warrantless seizure of the guns was appropriate under the community caretaker doctrine and did not violate the Defendant's Fourth Amendment rights.

For the reasons stated above, Motion to Suppress is denied.