# CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Holden Stewart Parker

March 7, 2014

Case No. 14-22

By Judge David B. Carson

The parties are before the Court on the Defendant's Motion to Suppress. The Defendant, by counsel, argues that, on October 20, 2013, Sergeant Lovell and Officer Register of the Roanoke City Police Department violated his Fourth Amendment right against unreasonable searches and seizures when they improperly detained and subsequently arrested him following an alleged "well-being check." On February 28, 2014, the Court heard evidence and argument on the Defendant's motion. For the reasons that follow, I deny the Defendant's motion.

*Facts*

At approximately 4:00 a.m. on October 20, 2013, for reasons unrelated to their subsequent encounter with the Defendant, Sergeant Lovell and Officer Register of the Roanoke City Police Department were present on a private parking lot adjacent to at least two downtown Roanoke restaurants. The parking lot was accessible by and visible to the public.

While investigating an unrelated disturbance in the parking lot, the police officers noticed the Defendant behind the wheel of his parked car, which was also located in the parking lot. All of the windows of the Defendant's vehicle were in the up or closed position. At the same time, the officers could see that the keys were in the ignition of the Defendant's vehicle, but the car was not running. Finally, the officers could see that the Defendant had his eyes closed and did not appear to be moving in any respect.

Both officers testified unequivocally that they were concerned about the Defendant's health and safety. Accordingly, they proceeded to knock on the windows of the Defendant's vehicle – one officer on the driver's side and

the other officer on the passenger's side. Sergeant Lovell recalled tapping on the window for ten to fifteen seconds. Officer Register recalled tapping on the window for a minute or two. Regardless, both officers testified that, despite their efforts to get any response from the Defendant, there was none.

The officers then decided to open the doors of the Defendant's car – once again to determine if the Defendant was safe or needed assistance of some kind. One officer attempted to open the passenger's-side door, but it was locked. The other officer attempted to open the driver's-side door, which was open. Both officers then fully opened the driver's-side door. When they did so, they immediately detected a strong odor of alcohol from the vehicle. They also noticed that the Defendant's clothes were disheveled and the knuckles on his hands were bloody.

After fully opening the Defendant's driver's-side door, the Defendant still did not respond in any way and his eyes remained closed. Sergeant Lovell then commenced a "sternum rub," which he described as using the end of his flashlight to rub the Defendant's sternum in an effort to elicit a response from him. The Defendant once again did not speak, move, open his eyes, or react in any way.

Sergeant Lovell then prodded the Defendant's left shoulder with his flashlight. At that point, the Defendant briefly moaned and then let loose with a torrent of expletives directed at the officers. Both officers recalled that, throughout his expletive-laden rant, the Defendant was slurring his words. At that point, Sergeant Lovell placed the Defendant under arrest for being drunk in public and asked him to get out of his car. The Defendant refused to exit his car, continued with his rant, and "resisted" the officers' efforts to remove him from his car. Ultimately, the officers used pepper spray to extract the Defendant from his car. After he was out of his car, the Defendant allegedly struck Officer Register, which resulted in the Defendant being charged with assault and battery of a law enforcement officer.

*Issue*

Based on the above facts, the defense argues that the officers' actions violated the Defendant's Fourth Amendment right against unreasonable searches and seizures. Specifically, the defense argues that the officers' decision to approach and enter the Defendant's car exceeded the community caretaker exception relied upon by the Commonwealth in support of the officers' actions. Alternatively, the defense argues that, even if the officers were justified in opening the Defendant's car, the officers exceeded their community caretaker function when they arrested the Defendant for being drunk in public and subsequently removed him from his vehicle.

*Analysis*

In *Cady v. Dombrowski*, 413 U.S. 433 (1973), the United States Supreme Court recognized an exception to the Fourth Amendment's guarantee against unreasonable searches and seizures by articulating the so-called "community caretaker exception." In that case, the Court stated as follows:

> Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . . Often [that] noncriminal contact with automobiles will bring . . . officials in "plain view" of evidence, fruits, or instrumentalities of a crime.

*Id.* at 441-42. If, in the course of performing their community caretaker function, officers come across evidence of a crime, there is no unreasonable search and seizure and the evidence will not be suppressed. *Id.* at 446-48.

In Virginia, the Court of Appeals has addressed both the exception and the rationale behind it. In *Commonwealth v. Waters*, 20 Va. App. 285, 290, 456 S.E.2d 527, 530 (1995), the court stated as follows:

> Police officers have an obligation to aid citizens who are ill or in distress, as well as a duty to protect citizens from criminal activity. The two functions are unrelated but not exclusive of one another. Objective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine.

The court then provided the following analytical framework for determining whether the community caretaker exception applies to a given situation:

> The appropriateness of applying the community caretaker doctrine to a given factual scenario is determined by whether: (1) the officer's initial contact or investigation is reasonable; (2) the intrusion is limited; and (3) the officer is not investigating criminal conduct under the pretext of exercising his community caretaker function.

*Id.* at 290, 456 S.E.2d at 530.

Applying the analytical framework from *Waters* to the facts in this case, I have no difficulty concluding that the officers' initial contact with the Defendant was reasonable. Specifically, for reasons unrelated to the

Defendant, the officers were present in the parking lot where the Defendant's vehicle was located. The officers then noticed the Defendant in his vehicle, noticed that he did not appear responsive, and undertook to determine if the Defendant was safe and healthy.

After the Defendant did not react to them in any way in response to the limited efforts to elicit a response from him by tapping on his windows, the officers then decided to open the door of his car – once again to check on his health and safety. At that point, they took limited and reasonable steps to determine if the Defendant required additional assistance by performing a "sternum rub" and later by prodding him. Frankly, had the officers not taken steps to check on the Defendant's condition under the circumstances of this case, I feel the officers would have violated their unwritten obligation to aid a citizen who may have been in distress.

Finally, the defense has presented no evidence that the officers' efforts to check on the health and safety of the Defendant were a pretext for investigating criminal activity. To the contrary, the overwhelming evidence presented is that officers were performing exactly the type of community caretaker function identified by the United States Supreme Court in the *Cady* case.

Once the officers were reasonably present in the Defendant's vehicle and as part of their efforts to check on the health and safety of the Defendant, they necessarily confronted various pieces of open and obvious evidence. In particular, after opening the driver's-side door of the Defendant's vehicle, they detected a strong odor of alcohol, observed the Defendant's disheveled clothing and bloody knuckles, ultimately heard his slurred speech, and were cognizant of his hostile and extensive use of profanity. As the Court of Appeals recognized in *Waters*:

> If a police-citizen encounter is based upon an objectively reasonable belief that aid or assistance is warranted and contraband or other evidence of a crime is discovered incident to the lawful performance of an officer's duties, *the officer need not ignore that which is discovered.*

*Waters*, 20 Va. App. at 291, 456 S.E.2d at 530 (emphasis added).

Under the circumstances, I do not feel the officers exceeded the scope of their community caretaker function. Rather, what started as an appropriate effort to check on the Defendant's health and safety incidentally led to evidence for which the officers had probable cause to arrest the Defendant for being drunk in public.

## Conclusion

There being no violation of the Defendant's Fourth Amendment right against unreasonable searches and seizures, the Defendant's Motion to

Suppress is denied. The Clerk is directed to prepare an Order denying the Defendant's Motion to Suppress and incorporating this opinion, with copies to be certified to each counsel.